FEDERAL DEPOSIT INSURANCE COR-
PORATION, Liquidator of Hamilton
National Bank of Chattanooga, Plain-
tiff,

v.

KUCERA BUILDERS, INC. et
al., Defendants.

Civ. A. No. C79–1497A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 7, 1980.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for plaintiff.

Charles B. Withers Law Offices, Atlanta, Ga., for defendants.

## ORDER

MOYE, Chief Judge.

This action was filed by the Federal Deposit Insurance Corporation (FDIC) in its corporate capacity as liquidator of the Hamilton National Bank of Chattanooga (Bank) seeking to recover on a note executed by defendant Kucera Builders, Inc., and guaranteed by defendant Gerald Kucera. Jurisdiction is invoked pursuant to section 9 of the Federal Deposit Insurance Act, 12 U.S.C. § 1819 and 28 U.S.C. § 1348. Presently pending before the Court is plaintiff's motion for summary judgment.

On March 8, 1974, defendant Kucera Builders executed and delivered a real estate note to the Hamilton Mortgage Corporation (HMC) in the principal amount of $133,500.00. It is undisputed that said note was guaranteed by Gerald Kucera, individually. Said note was secured by a particular piece of real estate located in Gwinnett County, Georgia. By its own terms the note matured on March 8, 1975. While the defendant denies the note went into default for nonpayment, defendants admit receipt of plaintiff's ten-day letter[1] and admit their failure to pay within the ten-day period.

On October 28, 1975, HMC conveyed an undivided 99 and 90/100 percent interest in the security deed and note to the Bank and on December 5, 1977, Kyle R. Weems, Trustee in Possession of HMC under Chapter XI of the Bankruptcy Act, conveyed the remaining interest in said note to the FDIC, which was acting as liquidator of the Bank and which had acquired the Bank's interest in said note due to the Bank's insolvency. Thus, the FDIC in its corporate capacity became the sole owner and holder of said note.

---

1. The ten-day letter was a letter from counsel for the FDIC to the defendants dated June 8, 1978, in which the defendants were notified that the provisions in the note relative to payment of attorney's fees would be enforced and that unless the total accelerated principal and interest was paid within ten days from the date of receipt of the letter, attorney's fees would be imposed. The letter was received by defendants on June 13, 1978, but the principal and interest was admittedly not paid within ten days of receipt of the letter.

The power of sale in the security deed was exercised on the first Tuesday in July 1978, and the property securing the note was sold for $92,800.00. The foreclosure sale was reported to and confirmed by Judge William C. O'Kelley of this Court by order dated May 3, 1979.

Alleging that the defendants defaulted on the note, the plaintiff seeks recovery as follows:

```
Principal                              $69,342.62

Interest from July 5, 1978,
at the rate of 15% per annum
pursuant to the terms of the
note, through July 9, 1979             $10,543.88

Accrued interest from July 10,
1979, through April 1, 1980*           $ 7,580.20

Attorneys fees as of April 1,
1980**                                 $27,040.00
```

\* Accrued interest continues to accrue at the rate of $28.4970 per diem.

\*\* Attorney's fees continue to accrue at the rate of fifteen percent of the accruing interest through date of judgment.

---

In addition to denying any indebtedness on the note, the defendants asserted the following defenses: (1) plaintiff acquired the note described in the complaint subsequent to dishonor and with notice of default and not for new value; (2) plaintiff is estopped from asserting the claim against defendants; (3) plaintiff has waived any claims it may have against defendants; (4) the note was not enforceable against defendants at the time plaintiff obtained an interest therein, as plaintiff's assignor of said note was in breach of its obligations under the note, security deed, and commitments; (5) plaintiff is subject to the obligations and defenses defendants have against plaintiff's assignor; (6) the assignor's failure to tender consideration renders the note and security deed unenforceable against these defendants due to failure of consideration; (7) the actions of plaintiff's assignor materially increased the risk of defendant Kucera as guarantor, thereby discharging him as guarantor; (8) defendants executed the note, guaranty agreement, and security deed on the representation that HMC would provide defendants with construction loans; this misrepresentation was wilfully fraudulent, and due to defendants' reliance on it defendants were injured by it; and (9) plaintiff is subject to the obligations and defenses defendants have against HMC. Further, the defendants asserted a counterclaim based on the allegation of fraudulent misrepresentation.

The plaintiff first asserts that because the defendants have admitted executing the real estate note and the guaranty agreement sued on and failed to plead or establish an affirmative defense, the plaintiff has established a prima facie right to the judgment sought. The Court agrees that a prima facie case exists, but declines to find grounds for granting plaintiff's motion on this point alone. Ga.Code Ann. § 109A-3-307 provides in subsection (2) that "when signatures are admitted or established, production of the instrument entitles the holder to recover on it unless the defendant establishes a defense." In interpreting this statute, a portion of the Uniform Commercial Code (U.C.C.), the Georgia Court of Appeals in *Freezamatic Corp. v. Brigadier Industries Corp.*, 125 Ga.App. 767, 189 S.E.2d 108 (1972), held that with the admission by the defendant of his execution of

the note to the plaintiff, the plaintiff had a prima facie right to the judgment sought and the defendant then had the burden of establishing any claimed defense to the action. While the defendants herein have affirmatively pleaded estoppel, failure of consideration, fraud, and discharge, pursuant to Fed.R.Civ.P. 8(c), they did not affirmatively plead payment of the note. The plaintiff has established through the affidavit of Richard H. Gaskill, liquidator of the Bank, that the defendants are in default on the note. Gaskill Affidavit, ¶ 10. Even though this allegation is uncontroverted, the Court is unable to grant plaintiff's motion on this fact alone since defendants have raised the above defenses outside the personal knowledge of said affiant as affirmative defenses.

Despite the remaining defenses of the defendants, the plaintiff urges that it is insulated by 12 U.S.C. § 1823(e) from all defenses founded on actions of HMC as assignor of the note now held by the FDIC. That provision states, in part:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor contemporaneously with the acquisition of the asset by the bank (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously from the time of its execution, an official record of the bank.

■ Plaintiff points out that the defendants have directed their defense toward the HMC and not the FDIC in alleging failure of consideration, estoppel and discharge of guarantor, misrepresentation that construction loans would be provided, and wilful misrepresentation. Defendants assert that the FDIC is subject to the defenses defendants have against HMC. It is clear, however, that section 1823(e) immunizes the FDIC from such defenses to payment on a note as collateral agreements (1) to make future loans, *FDIC v. Allen*, CA No. C78–592A (N.D.Ga. June 21, 1979), *FDIC v. Vogel*, 437 F.Supp. 660 (E.D.Wis.1977); (2) to cancel a note if the purpose of the loan proves unobtainable, *Dasco v. American City Bank & Trust Co.*, 429 F.Supp. 767 (D.Nev.1977); (3) to fund loans made to a guarantor's business, *FDIC v. Smith*, 466 F.Supp. 843 (N.D.Ga.1979); and (4) to treat overdrafts as a loan, *West v. FDIC*, 149 Ga.App. 342, 254 S.E.2d 392 (1979).

■ Defendants argue, however, that despite the shielding effect of section 1823(e) in the above cases the affidavit filed by Richard Gaskill on behalf of the plaintiffs is insufficient to insure that section 1823(e)'s protective cover for the FDIC as liquidator of a failed bank is applicable here. Defendants contend that the affidavit of the liquidator does not show the existence of certain receiverships, certain situations which will facilitate a merger or consolidation of an insured bank with another insured bank, or certain situations which will facilitate the sale of the assets of an open or closed insured bank to and assumption of its liabilities by another insured bank. Since these facts are absent, defendants argue, the shield of section 1823(e) cannot be used as the "no agreement which tends to diminish ..." language relied on by plaintiff is by its own terms only applicable to assets acquired by the FDIC under section 1823.

The Court points defendants to paragraph 6 and exhibit A–4 to Gaskill's affidavit. That paragraph and the documents to which it refers clearly show that this case is one where the receiver or liquidator of an insured bank, closed on account of inability to meet the demands of its depositors, is entitled to offer the assets of the bank for sale to the FDIC as allowed by section 1823(d), and that such a transaction has herein occurred. The Court therefore finds no merit to defendants' first contention that section 1823(e) is inapplicable.

■ The defendants argue further under the analysis of *Riverside Park Realty Co. v. FDIC*, 465 F.Supp. 305 (M.D.Tenn.1978), that the "agreement" referred to in section 1823(e) is unlike the one which the FDIC herein seeks to avoid. The agreement the defendant bases his defenses on is the one between Bo Means of HMC and the defendants in which Means allegedly promised future construction loans to defendants. That alleged agreement is not evidenced in the note sued upon and is therefore a separate collateral or secret agreement which would alter the terms of an asset acquired by the FDIC. Such a collateral oral agreement is the very type of agreement from which section 1823(e) shields the FDIC. *FDIC v. Smith*, 466 F.Supp. 843, 845 (N.D. Ga.1979); *Riverside Park Rlty Co. v. FDIC*, 465 F.Supp. 305, 313 (M.D.Tenn.1978); *FDIC v. Vogel*, 437 F.Supp. 660 (E.D.Wis. 1977); *Dasco v. American City Bank & Trust Co.*, 429 F.Supp. 767 (D.Nev.1977). Thus, defendants' second contention that section 1823(e) is inapplicable to the case *sub judice* is likewise without merit.

■ Having found section 1823(e) to apply to defendants' defenses and counterclaims, the Court notes that in its corporate role as liquidator the FDIC is not saddled with those liabilities of the insolvent bank which arise out of agreements which tend to diminish the interest acquired by the FDIC. Nor is the FDIC vulnerable to becoming unable to collect on the note it holds because it does not fulfill all the requirements of the U.C.C. to be a holder in due course. Any reference to holder in due course status is irrelevant since the statutory framework relied on by the plaintiff is based on Congressionally mandated federal public policy protecting the institution of banking. *FDIC v. Smith*, 466 F.Supp. 843, 845 (N.D.Ga.1979). Therefore, defendants'

defenses of estoppel, failure of consideration, and discharge are inapplicable to this action by the FDIC where it sues on a note acquired through a purchase and assumption procedure since those defenses are related to agreements between defendants, HMC, and the Bank, FDIC's predecessor as a holder of the real estate note on which the FDIC is now attempting to collect.

■ Remaining to be discussed are defendants' defenses and counterclaims based on fraud.[2] While claims of fraud are usually based on state common law, because the Court is here determining the rights and duties of a federal agency exercising authority granted it under 12 U.S.C. § 1823, federal common law is controlling. Where the United States exercises authority derived from acts of Congress "passed in the exercise of a 'constitutional function or power,'" federal common law controls. *United States v. Kimbell Foods*, 440 U.S. 715, 724, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979), *quoting Clearfield Trust Co. v. United States*, 318 U.S. 363, 366, 63 S.Ct. 573, 574, 87 L.Ed. 838 (1943). Thus, if the defendants are to withstand plaintiff's motion for summary judgment, a legal defense based on fraud must be available to them under the applicable federal common law and in addition genuine issues of material fact as to whether fraud was present in defendants' dealings with the HMC and the Bank must exist.

In a case somewhat similar to the one at bar, *Gunter v. Hutcheson*, 492 F.Supp. 546 (N.D.Ga.1980), this Court outlined the proper procedure for determining the proper content of a federal common law. Looking to *Kimbell Foods* the Court found the decisive factors to be as follows:

First, one must consider whether the federal program in question "[is] and

---

2. The Court, as was the case in *Gunter v. Hutcheson*, 492 F.Supp. 546, 552 (N.D.Ga. 1980), is unable to fit fraud into the shielding language of section 1823(e) because that statute speaks of a collateral "agreement." If defendants were defrauded certainly no "agreement" existed between the parties, as an agreement by definition is a meeting of the minds which is certainly not what occurs when one is

defrauded. While one district court has held that the FDIC assumes the role of a holder in due course based on section 1823(e) and is therefore not subject to the defense of fraud in the inducement, *see FDIC v. Rockelman*, 460 F.Supp. 999 (E.D.Wis.1978), this Court fails to find any basis for such a conclusion in section 1823(e). See *Gunter*, 492 F.Supp. at 551–52.

must be uniform in character throughout the Nation." *Kimbell Foods,* 440 U.S. at 727, 99 S.Ct. at 1458. Second, one must determine "whether application of state law would frustrate specific objectives of the federal programs." *Id.* Third, it is necessary to ascertain "the extent to which application of a federal rule would disrupt commercial relationships predicated on state law." *Id.* at 728, 99 S.Ct. at 1459.

492 F.Supp. at 555.

Because the facts in *Gunter* are so similar to the ones before the Court today, the Court turns to its analysis and conclusions in *Gunter* to fashion the appropriate federal common law in the case at bar. There the Court found that with regard to the question of whether the federal program herein involved must be uniform in character throughout the United States, the FDIC indeed must be governed by a uniform rule requiring that it be on guard only against fraud of which it has actual knowledge at the time the purchase and assumption transaction began. 492 F.Supp. at 555. Next the Court turned to the second factor, that of whether application of state law would frustrate specific objectives of federal programs. The Court found that making the FDIC responsible for the fraud of its predecessors in interest of which it has no actual knowledge in a purchase and assumption agreement would cause the FDIC to enter such transactions without complete information with respect to the amount of worthless paper it may be ں taining and as to the number of lawsuits in which it might have to defend against fraud upon its debtors by its predecessors in interest. *Id.* at 556. Thus, the first and second *Kimbell Foods* factors tend to indicate that the federal common law to be fashioned here should protect the FDIC from defenses of fraud of which it had no knowledge when it acquired defendants' note.

The third factor of *Kimbell Foods* presents a different question for consideration here than was presented to this Court in *Gunter.* Because the plaintiffs in *Gunter* were purchasers of securities and had avail-

able the protection of section 29 of the Securities Exchange Act of 1934, the Court found it unreasonable for them to rely on state common law of fraud to protect them against deceit by their sellers. Thus, disallowing fraud as a defense to the Gunter plaintiffs under federal common law should not have significantly disrupted any commercial relationships reasonably predicated on state law, 492 F.Supp. at 556, leading the Court to conclude that under the *Kimbell Foods* analysis state law had no role in the dispute between the plaintiffs and the FDIC. *Id.*

Here no federal securities law is involved. The state law upon which the defendants relied in borrowing money from the HMC was the Uniform Commercial Code (U.C.C.), title 109A of the Ga.Code Ann. To determine whether the third *Kimbell Foods* factor cuts in favor of or against adopting the U.C.C. as the applicable federal common law in this case, the Court must decide whether the commercial relationship entered into between the defendants and the HMC would be disrupted if the U.C.C. is or is not applied. If the U.C.C. is applied, defendants will be able to assert fraud as a defense to the FDIC's attempt to collect on the real estate note executed by defendants because the FDIC is not a holder in due course as defined by U.C.C. § 3–302 since it took the defendants' note from the Bank with notice that it was overdue. *See* U.C.C. § 3–306(b). If the FDIC *were* a holder in due course, defendants' claim of fraud in the inducement would not be a defense that the defendants could assert because fraud in the inducement is a personal defense of which a holder in due course takes free if it is asserted by parties with whom he has not dealt. *See* U.C.C. § 3–305(2). The question, therefore, is whether defendants had reason to believe when they entered into the loan agreement with the HMC that they would eventually have fraud in the inducement as a defense against a subsequent holder of the note.

When the defendants executed the note in favor of HMC they had no way to foresee that the HMC and its parent Bank would

fall into insolvency. The failure of banks has been a relatively rare occurrence since the creation of the Federal Reserve System and the supervision of banks by the Office of the Comptroller of the Currency. Because of the FDIC's special role as receiver and liquidator of failed banks it acquired the defendants' note after the note was overdue and after the note had become a contributing cause of the Bank's insolvency. The defendants had no reason to foresee an eventual need to assert a fraud defense against the FDIC when it executed the note in favor of HMC, and indeed *did* have every reason to expect that any other financial institution that purchased the note in the ordinary cause of business from HMC or the Bank would only do so if it would be able to qualify as a holder in due course. Thus, if the Court refuses to adopt the U.C.C. as federal common law in this case so as to avoid frustration of the federal policy to assist the FDIC as receiver and liquidator of failed member banks, no reasonable reliance on state law by the makers of notes will be altered except in the extremely rare case where a maker expects a payee bank to fail, expects the FDIC to become the subsequent holder of the note after it becomes overdue, and then finds the need to assert a personal defense against the FDIC. Such a case would be so rare that a refusal by this Court to adopt the U.C.C. here as federal common law could in no way be said to disrupt commercial relationships predicated on state law.

 Having examined the three *Kimbell Foods* factors, the Court concludes that (1) the defense against which the FDIC must defend must be uniform in character throughout the Nation so the FDIC can quickly elect whether to arrange for payment of insured deposits and then liquidate a failed bank's assets over a period of time, or assist the receiver in arranging a purchase and assumption transaction; (2) making the FDIC responsible for the fraud alleged herein would cause the FDIC to enter transactions such as this without complete information with respect to the amount of worthless paper it may be obtaining, thus frustrating the objective of the rescue of failed member banks; and (3) applying a federal rule shielding the FDIC from the defense of fraud in the inducement where the FDIC holds a note as liquidator of a failed member bank and had no knowledge of the fraud when it became the holder of the note will not disrupt commercial relationships predicated on state law. Therefore, under the federal common law applicable to this action defendants' only remaining defense of fraud is found to be inapplicable and the plaintiffs' motion for summary judgment in the amount prayed for is GRANTED, except that post judgment interest shall accrue at the rate of twelve percent (12%) per annum pursuant to 28 U.S.C. § 1961 and Ga.Code Ann. § 57–108, rather than the sixteen percent (16%) rate prayed for.

SO ORDERED.