Herbert R. BLACK, Thomas M. Daniels, Jr. and J. C. Clements, Plaintiffs-Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant-Appellee.

No. 80–7196.

United States Court of Appeals, Fifth Circuit. Unit B

March 26, 1981.

Pierce, Ranitz, Mahoney, Forbes & Coolidge, Morton G. Forbes, Thomas J. Mahoney, Jr., Savannah, Ga., for plaintiffs-appellants.

Bouhan, Williams & Levy, Leamon R. Holliday, III, Savannah, Ga., Frank L. Skillern, Jr., Gen. Counsel, Myers N. Fisher, Asst. Gen. Counsel, Ann Graham, FDIC, Washington, D. C., for defendant-appellee.

Before TUTTLE, RONEY and VANCE, Circuit Judges.

TUTTLE, Circuit Judge:

Black, Daniels, and Clements are three obligors who, on February 11, 1974, signed a note payable to Hamilton Mortgage Corporation for $458,000. This note was transferred to Hamilton National Bank and, upon that institution's insolvency, the Federal Deposit Insurance Corporation (FDIC) acquired it as a receiver of the bank. FDIC as receiver then sold the note to FDIC in its corporate capacity.

The purpose of this financing was to assist in the obligors' development of real estate. Under the "Acquisition and Development Loan Agreement" the lender was obligated to "make loans and advances to Borrower for the acquisition and development" of certain real estate. The sum of the advances was limited to $458,000.00.

The obligor had the right to draw specified sums for such purposes. When at most $14,892.00 remained to be drawn from Hamilton Mortgage in October, 1975, the obligor requested a final draw of $23,455.82. Payments of principal by obligors due before the making of the final draw request were admittedly not made on time. Hamilton Mortgage never issued the final draw. Subsequently, the obligors requested "construction financing" for its now-developed real estate. They believed they were entitled to these loans under the "Acquisition and Development Loan Agreement." Neither Hamilton Mortgage nor FDIC ever granted their request.

The obligors sued FDIC alleging breach of the agreements made with Hamilton Mortgage. They sought affirmative damages against FDIC, cancellation of the principal indebtedness still owed, and cancellation of the deed that pledged the real estate for the payments of the note. FDIC counterclaimed for the principal and interest due on the note. On defendant's motion for summary judgment, the district court disallowed all of plaintiffs' claims for affirmative damages. After hearing evidence on whether Hamilton Mortgage or FDIC had breached any of their respective obligations, the court directed a verdict against obligors who thereby lost any right to set off against the amount owed FDIC. Subsequently, the court directed a verdict for FDIC on its counterclaim for principal and interest due. The plaintiffs-obligors appeal the district court's rulings.

The first question we reach is whether the district court correctly concluded that there was no evidence before that court showing a breach of contract by either Hamilton Mortgage or FDIC. We believe that the district court correctly directed verdict on this issue. Obligors argue that Hamilton Mortgage and FDIC failed fully to fund development financing and later failed to fund construction financing (for the construction of individual housing units). First, the argument based on development funding must fail. All three obligors testified that the interim payments

were not paid by Black, Daniels, and Clements as due under the note. The Acquisition and Development Loan Agreement provided that the "Lender shall be under no obligation to make any advance if . . . Borrower breaches or fails to perform, observe or meet any covenant or condition herein made, or made in any instrument executed pursuant hereto." But the lender could continue to make advances without waiving its right to demand payment or withhold further advances. Hamilton Mortgage, and later FDIC, therefore could not have breached by failing to advance additional funds for development. Even if the loan was not fully funded in this respect, the express terms of the contract hold that the obligors, once breaching by late payment, no longer had a contractual right to further advances for development. Second, the construction funding argument must fail. None of the papers constituting the agreement committed Hamilton Mortgage to make *construction* financing to these obligors. Rather these papers dealing with acquisition and *development* financing merely gave Hamilton Mortgage the "right of first refusal on all construction financing generated by this development." The obligors label this language as "commandatory," but plainly it only binds the obligors to give this right to Hamilton Mortgage who may nevertheless refuse it. Therefore, under the written contract there was no breach because of failure to extend construction financing. The district court properly directed a verdict against the obligors because there was no evidence of any breach by FDIC or Hamilton Mortgage.[1]

■ Plaintiffs-obligors also attempted to engraft additional unwritten understandings onto the agreement. Specifically, they sought to alter the terms of agreement by testimony, excluded by the district court, regarding the subjective intent of Hamilton Mortgage and the custom of the lending trade. The purpose of this testimony was to establish that the agreement included an obligation of Hamilton Mortgage to make construction financing and that Hamilton Mortgage considered the prior tardiness of the obligors to be immaterial. Regardless of whether the parol evidence rule would make these alterations of the agreement irrelevant, the FDIC's statutory protection clearly shields it from the assertion of these oral side agreements.

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C.A. § 1823(e) (West 1980). These agreements urged upon us by the obligors clearly go beyond mere explanation of the written agreement. Language used by the

---

1. Our holding that there was no breach makes it unnecessary to consider the obligors' appeal of the district court's prior summary judgment ruling which held that the obligors could not sue FDIC for damages but could bring a recoupment action against FDIC, in its corporate capacity, to void the note. This holding was premised upon the court's belief that an action for recoupment is made against FDIC as receiver of the bank. *Compare Riverside Park Realty Co. v. FDIC*, 465 F.Supp. 305, 313 & n. 7 (M.D. Tenn.1978) (action may be made against FDIC in corporate capacity for breach of contract by FDIC's assignors when FDIC would try to re-

cover on the very same agreement) *with FDIC v. James T. Barry Co.*, 453 F.Supp. 81, 82–83 (E.D.Wis.1978) (in action on note held by FDIC in corporate capacity, recovery or recission against FDIC on counterclaims based on actions of FDIC's assignors dismissed) *and FDIC v. Smith*, 466 F.Supp. 843, 845 (N.D.Ga.1979) (semble). Similarly, we need not decide whether plaintiff has sued the FDIC as receiver as well as suing it in its corporate capacity. *See generally FDIC v. Design & Development, Inc.*, 73 F.R.D. 442, 443–44 (E.D.Wis.1977); *Freeling v. Sebring*, 296 F.2d 244 (10th Cir. 1961).

Court of Appeals for the Fourth Circuit in response to similar claimed oral understandings is appropriate in this case.

A plain reading of the statute reflects that a transparent attempt to avoid an obligation, such as was present in this case, is exactly the type of transaction proscribed by the Act.

*FDIC v. Waldron,* 630 F.2d 239, 241 (4th Cir. 1980).

 Obligors further question whether FDIC sufficiently proved the amount due under the note. They first claim that FDIC did not offer proper authentication under rule 901 for the beginning figure in FDIC's ledger regarding this account. An FDIC employee testified that the beginning figure of the balance due was taken from the bank's books by another FDIC employee. We believe it was sufficiently clear from the testimony of the FDIC employee that the "matter in question is what its proponent claims." Fed.R.Evid. 901(a). The obligors next argue that there was a fact question regarding the amount due because obligor-Black disputed the amount shown due by FDIC's records. But Black's dispute was never quantified. Moreover, his sole dispute with FDIC's figures turns on his belief that *no* interest was due on the principal outstanding after February 1976. The obligors do not support Black's belief with either fact or law. The district court's directed verdict on the amount owed was proper.

In all respects the judgment of the district court is AFFIRMED.