OPINION OF THE COURT
Kristin Booth Glen, J.
This motion for summary judgment is brought by the Federal Deposit Insurance Corporation (FDIC), as the receiver for *238 former plaintiff Central National Bank (CNB), which has previously been substituted as plaintiff, and raises the relatively novel question of whether personal defenses that are sufficient to preclude an award of summary judgment against the bank may be asserted against the FDIC.[1]
BACKGROUND
This action was originally brought by CNB, as successor to Central State Bank, to recover on a demand collateral note executed by defendant Chalet Food Corp., and a personal guarantee executed by defendant Anthony Godlewski. In the complaint, plaintiff seeks to recover the sum of $93,234 plus interest, at the rate of 18% per year, as well as $18,646.80 in attorney’s fees. In their answer, defendants make general denials and interpose the affirmative defenses of lack of consideration, fraud in inducement and conversion.
Plaintiff’s first motion for summary judgment was denied by order of Justice Margaret Taylor dated June 17, 1983. After extensive discovery was conducted, this court granted plaintiff’s second motion for summary judgment made in March of 1986. This determination was reversed on appeal on December 20, 1988 on the grounds that questions of fact existed as to the circumstances surrounding the entire transaction. The FDIC was thereafter substituted as plaintiff and this motion for summary judgment followed.
As in each of the previous motions for summary judgment, defendants oppose plaintiff’s demand for relief by asserting the affirmative defenses of fraud and failure of consideration. The issue raised in this motion is whether defendants may assert these affirmative defenses, which were held sufficient to preclude an award of summary judgment as against CNB, as against the FDIC.
APPLICABLE LAW
In support of its motion, the FDIC contends that defendants are now estopped from raising their affirmative defenses under the rule set forth in D’Oench, Duhme & Co. v Federal Deposit Ins. Corp. (315 US 447 [1942], reh denied 315 US 830 [1942]).
*239 In D’Oench, Duhme (supra), the leading case in this area, the maker of a note asserted the defense of lack of consideration based on an agreement made with the bank that the note, which was apparently given to conceal certain irregularities from the bank examiners, would never be called for payment. Nevertheless, the note appeared on the bank’s books as a valuable asset.
Because the "secret agreement” between the accommodation maker and the bank had the effect of misrepresenting the true value of the bank’s assets, to the potential detriment of any party who might have cause to rely on this misrepresentation, the maker was estopped from asserting his defense against the FDIC. This determination was required even where the maker acted without intent to defraud, or in ignorance (supra, 315 US, at 458-459) since by his action or inaction, he had "lent himself to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled” (supra, at 460). In applying the doctrine of estoppel, the court stated that its overriding concern was to serve the public policy, i.e., "to protect [the FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [it] insures or to which it makes loans” (supra, at 457).[2]
While D’Oench, Duhme (supra) involved a "secret” or "side” agreement which would, if enforced, have the effect of altering the face value of the note, it has been recognized that the holding in this case has a wider application, and may apply where the acts or inaction of the maker contributes in some other fashion to the misrepresentation of the bank’s assets. For example, in Federal Deposit Ins. Corp. v McClanahan (795 F2d 512 [5th Cir 1986]), the court dealt with a case in which the maker’s negligence in signing a promissory note in blank, and in giving it to a disreputable character and known swin *240 dler, constituted an act in which the maker "lent himself’ to such a scheme as brought the action within the estoppel rule of D’Oench, Duhme (supra, 795 F2d, at 515).
In McClanahan (supra), the hapless maker had signed the note in the hope of receiving a loan, and failed to retrieve the note when hope failed. The court determined that the innocence of the victim of the bank’s fraud was irrelevant in a suit against the FDIC, as receiver for the insolvent bank, as it was the " ' "evil tendency” ’ ” of the act to contravene public policy governing bank transactions, rather than the motive for the act, which creates the estoppel (supra, at 515). According to the McClanahan court, the maker’s acts could "only be characterized as reckless”, and as between the maker, and the innocent depositors and creditors of the defunct institution, the maker would have to suffer the loss (supra, at 516; see also, Federal Deposit Ins. Corp. v Powers, 576 F Supp 1167 [ND Ill 1983], affd 753 F2d 1076 [7th Cir 1984] [execution of a personal guarantee in blank]; Federal Sav. & Loan Ins. Corp. v Murray, 853 F2d 1251 [5th Cir 1988] [execution of blank pages in documents]).
Case law has, however, recognized a few exceptions to the rule of D’Oench, Duhme (supra) where application of the estoppel doctrine would cause a truly innocent party to bear a loss. Thus, a defense of fraud in the factum, i.e., the sort of fraud that procures a party’s signature to an instrument without knowledge of its true nature or contents, may be asserted against the FDIC. (See, Langley v Federal Deposit Ins. Corp., 484 US 86, 93-94 [1987].) Similarly, at least one court has found that the rule of D’Oench, Duhme does not apply to a victim of a bank’s fraud who did not act negligently with respect to the circumstances giving rise to his defense. (See, Federal Deposit Ins. Corp. v Meo, 505 F2d 790 [9th Cir 1974].)
DISCUSSION
In the present case there is no evidence of any "secret agreements” between the defendants and CNB which would serve to alter or reduce the face value of the note. As the FDIC contends, however, the defendants are not innocent victims, but instead lent themselves to a scheme which permitted the assets of CNB to appear inflated by the inclusion of an ostensibly valid note in the sum of $100,000.
Defendant Godlewski concededly signed the note and the guarantee. He endorsed a bank check in the sum of $100,000, fully apprised of its character, all without ever filling in a *241 loan application and under the impression that no loan had yet been approved. Even though he had yet to receive a penny of the principal, he made several monthly payments to CBN, in the hope of receiving credit for these payments once the loan was "finally formalized”. Defendants’ acts in cooperation with the bank, however well intentioned and innocent, constituted the sort of recklessness which brings the matter within the estoppel rule of D’Oench, Duhme and Federal Deposit Ins. Corp. v McClanahan (supra).
Similarly, defendants’ attempt to set forth a defense of fraud in the factum also must fail. Godlewski’s deposition testimony clearly demonstrates that he signed the note, the guarantee and the bank check, with full knowledge of the nature of each, so that no case for fraud in the factum can be maintained.
Finally, defendants’ remaining arguments concerning the FDIC’s status as a holder in due course are irrelevant here. This is particularly true, since most of the case law developed under D’Oench, Duhme (supra) has the practical effect of extending holder in due course status to FDIC. (See generally, Federal Sav. & Loan Ins. Corp. v Murray, 853 F2d 1251, supra.)
Finally, this finding is not at odds with the holding of the Appellate Division, First Department, to the effect that questions of fact exist as to defendants’ defenses. Those defenses, although viable against the bank, cannot be raised against the FDIC under the facts of this case.
CONCLUSION
Because the defendants’ acts made possible the deception as to the bank’s assets, defendants are estopped from asserting these acts as defenses against the note now that the bank’s assets are in the hands of the FDIC. The FDIC is therefore entitled to recover on the note and/or guarantee executed by defendants. The issues of the reasonable amount of attorneys’ fees that plaintiff is entitled to recover, along with the amount of interest due on the note,[3] are referred to a Referee. If the *242 parties so agree, the order to be settled shall provide that the Referee shall hear and determine on consent; if there is no such consent, the order shall provide that the Referee shall hear and report with recommendations.

. A similar issue was decided by Justice Herman Kahn, though without substantial discussion, in First Inter-County Bank v Roadworks Indus. (NYLJ, Nov. 4,1988, at 22, col 4).

. D’Oench, Duhme & Co. v Federal Deposit Ins. Corp. (315 US 447) and succeeding cases govern this case since the FDIC is acting as receiver of a bank. However, Congress has embodied the same public policy in statutory form in 12 USC § 1823 (e) in situations where the FDIC is acting as a purchaser of assets from a failed bank pursuant to a purchase and assumption transaction. (See generally, Federal Deposit Ins. Corp. v Vogel, 437 F Supp 660 [ED Wis 1977]; Federal Deposit Ins. Corp. v Kucera Bldrs., 503 F Supp 967 [ND Ga 1980].) 12 USC § 1823 (e) was subsequently recodified by Congress in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) as 12 USC § 1821 (d) (9) (A).

. The promissory note contained no interest rate, so that plaintiff will have to justify the rate it seeks.