NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURG, PA.,
Plaintiff–Appellee,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, et al.,
Defendants–Appellants,

Estate of B. Ray Thompson,
Defendant–Appellant.

Supreme Court of Tennessee,
at Knoxville.

July 13, 1992.

Raymond R. Murphy, Jr., Marcia J. Meredith, Douglas T. Johnson, Miller & Martin, Chattanooga, for defendants-appellants, F.D.I.C.

Robert S. Young, Archie R. Carpenter, Knoxville, for defendant-appellant, Estate of B. Ray Thompson.

Robert J. Warner, Jr., H. Frederick Humbracht, Jr., Dearborn & Ewing, Nashville, Kenneth A. Sagat, Thomas Hanlon, D'Amato & Lynch, New York City, for plaintiff-appellee.

## OPINION

TIPTON, Special Justice.

This case arises from the failure of the United American Bank in Knoxville, Tennessee (UAB–K). The Federal Deposit Insurance Corporation (FDIC) and the estate of B. Ray Thompson, Sr., seek to enforce a director and officer liability policy issued by National Union Fire Insurance Company by which National Union agreed to indemnify UAB–K directors and officers for losses, as legal obligations, incurred by them resulting from claims of wrongful acts by them in their respective bank capacities. Seeking to avoid payment, National Union contends (1) that the liability policy is void because of material misrepresentations made in the application for the policy and (2) that, even if the policy is valid, acts of wrongdoing of which directors and officers were aware or had information before the effective date of the policy are excluded from coverage. The primary issue in this appeal relates to whether or not 12 U.S.C. § 1823(e) of the Federal Deposit Insurance Act, as amended, bars National Union from asserting such defenses against FDIC and the Thompson estate.

By summary judgment, the Knox County Chancery Court held that the federal statute barred the use of the defenses against the FDIC, but not against the Thompson estate. After a separate hearing, the chancellor awarded the FDIC the principal sum of $16,250,000.00 under the policy. In a divided opinion, the Court of Appeals reversed the award and held that 12 U.S.C. § 1823(e) did not apply to bar National Union's defenses against the FDIC or the Thompson estate. It pretermitted all other issues raised on appeal by the parties.

### I

On March 2, 1982, National Union entered into a Directors and Officers Liability and Corporation Reimbursement contract of insurance with UAB–K. It was effective for three years and had a $20,000,000.00 limit. Actually, the contract reflected two policies. The corporate reimbursement policy, not at issue, extended coverage to UAB–K for legal obligations incurred by it to reimburse officers or directors for losses they might incur because of officer or director wrongful acts.

The D & O policy provided that the directors and officers were the insureds and that UAB–K was to act on their behalf as to notice provisions and premium transac-

tions under the policy. It was a claims made policy covering claims asserted during the policy term. The policy application was submitted by UAB–K, signed by its president and dated February 24, 1982. Other financial information documents were submitted, as well, as required by the application. By its terms, the application was made part of the policy.

On February 14, 1983, the Tennessee Commissioner of Banking closed and took possession of UAB–K and the FDIC was appointed as receiver. On February 15, 1983, the FDIC, both as the receiver and in its corporate capacity, entered into a Purchase and Assumption Agreement with First Tennessee Bank in which First Tennessee received certain UAB–K assets and liabilities from the FDIC as the receiver. In turn, First Tennessee assigned to the FDIC, in its corporate capacity, "all claims or litigations (the 'Claims') which [UAB–K], on or before the Bank Closing maintained or could have maintained against its Officers or Directors, any underwriters of blanket bonds of [UAB–K] or accountants or others retained by [UAB–K]."[1]

In February, 1984, the FDIC gave written notice to National Union of various claims against directors and officers. In April, 1984, the FDIC sued the UAB–K directors and some officers in federal court claiming numerous acts of unsafe, unsound, irregular and negligent practices and seeking over $200,000,000.00 in damages. This suit resulted in the execution of a Covenant and Assignment agreement and the entry of an agreed judgment against twenty-two directors and six officers, some severally and others jointly liable, for various sums which totaled $109,569,039.

By the Covenant and Assignment, the named directors and officers assigned to the FDIC any claims they had against National Union under the D & O liability policy, except for certain retained portions. The relevant portion of this agreement states as follows:

The Contracting Parties do hereby transfer, assign and convey to FDIC all their right, title and interests in and to any and all claims, rights and causes of action, without representation or warranty, they and each of them may have against National Union Fire Insurance Company of Pittsburg, Pennsylvania arising under, by reason of or in any way connected with that directors and officers liability and corporate reimbursement policy No. 920–67–31 and 920–64–43, including but not limited to their rights to the proceeds thereof or to be reimbursed pursuant to said policy for their payments made hereunder except that the Contracting Parties do hereby save and retain unto themselves their right to be reimbursed for payments made hereunder from the proceeds of the aforesaid policies in an amount equal to fifty percent of the first $6,000,000.00 that may be recovered under the aforesaid policies up to a maximum amount of $3,000,000.00, and in addition fifty percent of any recovery in excess of the first $20,000,000.00 that may be recovered under the aforesaid policies up to a maximum of $2,500,000.00 and for attorney fees incurred in defending the "Suit" for which Contracting Parties are entitled to reimbursement or payment under the policies up to a maximum of $1.5 million (herein referred to as "retained portion"). The Contracting Parties do hereby convey to the FDIC the right and power, in the discretion of FDIC, to institute and compromise for itself and the Contracting Parties any suit filed in connection with this assignment and the retained portion in the names of the individual Contracting Parties or the FDIC and agree to cooperate with FDIC in the prosecution thereof, and the Contracting Parties shall only be responsible for costs and attorney fees they incur in seeking recovery of the "retained portion."

Also, the FDIC agreed not to execute upon or otherwise enforce the agreed judgment

---

**1.** For convenience, references in this opinion shall be to Receiver for the FDIC in that capacity and to the FDIC for its corporate capacity.

against the contracting parties or their assets. Under the Covenant and Assignment, the directors and officers delivered to the FDIC $7,500,000.00 in cash and a collateralized promissory note for two and a half million dollars. By separate agreement, the other directors and officers assigned their right to the retained portion to B. Ray Thompson, Sr., whose estate is now an interested party to this controversy.

## II

In this case, National Union sought declaratory relief in Knox County Chancery Court against the Receiver and thirty-seven UAB–K directors and officers. It sought either to rescind the D & O liability policy as void or, at least, a declaration that under the policy any wrongful acts about which any directors and officers knew or should have known before the issuance of the policy were not covered. It alleged that various statements in UAB–K's application were materially false and were known by certain directors and officers to be false. Among other things, National Union alleged that the financial reports and call reports were materially false and misleading, that assets were substantially overstated and liabilities understated, that loan losses were materially understated, and income for 1980 and 1981 was grossly overstated. Also, it alleged that various officers and directors knew or should have known of previous wrongdoing which should have been reported in the application.

Question 20 of the policy application was: "Does any Director or Officer have knowledge or information of any act, error, or omission which give rise to a claim under the proposed policy?" The answer given to Question 20 was, "No." Paragraph 22 of the application provided: "It is agreed with respect to Questions 20 and 21 above that if such knowledge or information exists, any claim or action arising therefrom is excluded from this proposed coverage."

After settling the federal lawsuit, the FDIC intervened in the chancery court action and asserted its rights (obtained by assignment) to the D & O liability policy proceeds, given the agreed federal court judgment. It contended that National Union was barred from asserting any misrepresentation defense against the FDIC pursuant to 12 U.S.C. § 1823(e). Also, the Thompson estate contended that it was entitled to the protection of this federal statute for the retained portion, given the nature of the relationship of the FDIC with the directors and officers under the Covenant and Assignment. Obviously, if the FDIC cannot prevail, neither can the estate.

Generally, at the time of the chancery court litigation, § 1823 was an enabling statute granting broad powers to the FDIC to use corporate funds in taking such steps as necessary to assist financially troubled banks and to deal with the assets and liabilities of failed banks. It could require the use of bank assets as security for any loan it made to a bank or it could acquire bank assets outright. Section 1823(e) specifically provided:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

The chancellor held that the claims against the UAB–K directors and officers which the FDIC acquired under the Purchase and Assumption Agreement constituted "assets" under § 1823(e). From this premise he reasoned as follows:

With respect to such claims under § 1823(e) no agreement (including inducing fraud and misrepresentation ...) which tends to diminish or defeat the

FDIC's interest therein is valid unless the explicit recording requirements of § 1823(e) are met. Since there is no suggestion in this case that the appropriate UAB minutes reflect approval of the alleged misrepresentations, the question here is whether the misrepresentations asserted by Plaintiff National tend to defeat or diminish the FDIC's interest in the claims the FDIC acquired against the directors and officers. If they do, they may not be asserted against the FDIC. The chancellor interpreted "claim" to include the concept of collection, including the right to collect. With this interpretation, he reasoned that because voiding the policy would diminish the "recoverability and value" of the claims, it would diminish the FDIC's interests. Thus, he held that because National Union's asserted defense to void the policy was not based upon an agreement meeting the § 1823(e) requirements, it could not be used to defeat the FDIC's right to claim policy proceeds. Also, he determined that the statutory protection afforded the FDIC did not apply to the right to a portion of the policy proceeds retained by the directors and officers.

As to National Union's claim that paragraphs 20 and 22 of the application constituted facially expressed terms which would meet the requirements of § 1823(e) and allow for excluding known, but unreported, claims from coverage, the chancellor held that the FDIC was entitled to rely upon the "no" response in paragraph 20 as true. The chancellor thought significant the fact that the general and broad representation by UAB–K that no claims were known would provide no information to the FDIC regarding the existence of any such claim. He stated that the FDIC could only be denied § 1823(e) protection if the documents disclosed what the true situation was. In effect, the chancellor was indicating that § 1823(e) required that each claim for which the "no" response was a misrepresentation should have been documented in accordance with all the requirements of the statute.

In reversing the chancellor, the majority opinion of the Court of Appeals distinguished the right to recover under the liability policy from the asset, i.e., "claims," which the FDIC acquired through the Purchase and Assumption Agreement. It stated that the right to recover was a separate asset of the directors and officers as beneficial owners of the policy. Also, it determined that the record failed to show the FDIC owned the policy or had any rights under it, other than through the assignment executed by the directors and officers.[2] From such a premise, the majority opinion stated:

> Section 1823(e) protects FDIC only against agreements relied upon by an obligor to FDIC which would diminish or defeat FDIC's right, title or interest in an "asset acquired by it under this Section (1823), either as security for a loan or by purchase...." There are four reasons why we cannot agree with the chancellor: (1) The assignments from the officers and directors was not an "asset" which FDIC acquired under this "Section," that is, Section 1823, by means of the Purchase and Assumption Agreement; (2) It was not an asset of UAB; (3) It was acquired from the officers and directors, not under the Purchase and Assumption Agreement; (4) It was not acquired "as security for a loan;" (5) Nor was it acquired "by purchase." It was only an assignment. Without the protection of 1823(e) FDIC, as assignee, takes the claims subject to all the defenses of National Union.

The Court of Appeals refused to adopt the rationale in *Chatham Ventures, Inc., v. FDIC*, 651 F.2d 355 (5th Cir.1981) which applied § 1823(e) relative to a promissory note where part of the FDIC's interest in the note was acquired from a third party after the bank had failed. In *Chatham Ventures*, the obligors executed a security deed and a promissory note to Hamilton Mortgage Corporation. The mortgage company transferred a 97.45 percent inter-

---

**2.** The chancellor did not decide who owned the policy, deeming ownership irrelevant to his conclusions.

est in the note to Hamilton National Bank. The bank failed and the receiver of the bank transferred the 97.45 percent interest in the note to the FDIC. Meanwhile, the mortgage company entered bankruptcy. By agreement between the trustee in bankruptcy and the FDIC, the bankruptcy court approved the transfer of the remaining 2.55 percent interest in the note to the FDIC. The obligors sought to avoid liability for the note on the basis of a side agreement with the mortgage company and contended that, at least, § 1823(e) did not extend to the 2.55 percent interest acquired from the trustee. In rejecting the contention, the Fifth Circuit stated the following:

> The FDIC, in this case, had already purchased from the receiver of Hamilton National Bank an asset, a very large interest in a note, under its powers given by section 1823(e). The acquisition of the remaining 2.55% interest and the physical acquisition of the note was clearly part of a transaction entered to protect the FDIC's earlier purchase of an asset of an insured bank when the purchase would facilitate the transition of that bank's business to a solvent bank. The FDIC may "exercise ... all powers specifically granted ..., and such incidental powers as shall be necessary to carry out the powers so granted." 12 U.S.C.A. § 1819 (Seventh) (West 1980). The FDIC, then, acquired the note and the 2.55% interest in a proper use of its powers to aid the banking industry in event of a bank's insolvency. The statutory protection of section 1823(e) shields the FDIC from defenses or claims raised with respect to "any asset acquired by it under this section." 12 U.S.C. § 1823(e). The use of incidental powers, which are necessary to carry out the specific powers of section 1823(e), is sufficient to make the acquisition in question one that was made "under this section."

651 F.2d at 359. The Court of Appeals viewed the *Chatham Ventures* rationale as not being supported by the express wording in § 1823(e), which limited application to "any asset acquired by [FDIC] under this Section." It did not interpret § 1819

as expanding § 1823(e) protections to other acquired assets.

In this appeal, the FDIC primarily contends (1) that the D & O policy was an UAB–K asset which was acquired by the FDIC; (2) that the rights under the D & O policy were part of the asset obtained by the FDIC when it acquired the right to pursue claims against officers and directors; and (3) that the rights under the policy, if viewed as acquired from the officers and directors, are subject to § 1823(e) protections under the *Chatham Ventures* rationale. Upon any of these contentions being valid, the FDIC asserts that the failure to have written documentation of the misrepresentations in the manner required by § 1823(e) prevents National Union from relying upon the defenses it has asserted in this action.

▆ We view it unnecessary for us to decide the status of the policy or the rights thereunder as an asset acquired by the FDIC under § 1823. We hold that § 1823(e) does not bar the defenses upon which National Union seeks to rely to defeat the FDIC's claim because the defenses are inherently part of the contract of insurance and, also, are explicitly set forth in the policy application. In so holding, we rely upon *FDIC v. Aetna Casualty & Surety Co.*, 947 F.2d 196 (6th Cir.1991) *reh'g and reh'g en banc denied* (1992), decided after the Court of Appeals ruled in this case. A short development of the historical purposes behind § 1823(e) is appropriate.

Section 1823(e) was enacted in 1950 to provide statutory authority for the FDIC to rely on written bank records in the performance of its duties and the administration of its funds relative to those duties. It grew from previous Supreme Court cases which used federal common law principles to enforce a federal policy to protect the FDIC and the public funds it administers during the performance of its duties.

In *D'Oench, Duhme & Co., Inc., v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the FDIC filed suit to collect on a demand note for $5,000.00 executed by D'Oench, Duhme and payable to a federally

insured Illinois bank. The FDIC had acquired the note as part of the collateral securing a million dollar loan it made to the bank, in connection with the assumption of the bank's deposit liabilities by another bank. The note was made to renew previous notes. D'Oench, Duhme had previously sold the bank certain bonds which had defaulted. The original notes were executed in order that the bank records would not show any past due bonds. Each receipt the bank gave for the notes stated, "This note is given with the understanding it will not be called for payment." However, the receipts were not in the bank records and the FDIC was unaware of their existence. D'Oench, Duhme defended on the bases of the agreement contained in the receipts and of lack of consideration. The district court, under state law, held that the FDIC was an innocent holder in due course and that D'Oench, Duhme was estopped from asserting lack of consideration.

In affirming the judgment, the Supreme Court determined that federal common law applied. It stated that there was a federal policy evidenced by the banking laws "to protect [FDIC] and the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which [FDIC] insures or to which it makes loans." 315 U.S. at 457, 62 S.Ct. at 679. The Court recognized the importance of the FDIC being allowed to rely upon the genuineness of a bank's ostensible assets in fulfilling the FDIC's duties and it stated that "secret agreements" which entailed an arrangement tending to deceive the bank regulatory authorities could not be asserted by an obligor as a defense to the FDIC's claimed interest.

Section 1823(e) has been interpreted to protect the FDIC even if the obligor is an "innocent" party or if the FDIC is aware of the side agreement. In *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Langleys bought land in Louisiana, borrowing the purchase money from a federally insured bank. They executed a note, collateral mortgage and personal guarantees to the bank. Litigation arose dealing with the bank's suing on the note

and the Langleys claiming that the bank misrepresented the amount of land, the amount of mineral acreage, and the land's mineral lease status. During the litigation, the bank failed and the FDIC acquired the note. In affirming summary judgment for the FDIC, the Fifth Circuit held that the word "agreement" in § 1823(e) included the kinds of terms or warranties asserted by the Langleys in their misrepresentation defenses and, because the requirements of § 1823(e) were not met, those defenses were barred.

The Supreme Court affirmed, holding that the word "agreement" in § 1823(e) was not limited to an express promise to perform an act in the future. It relied upon *D'Oench, Duhme* and interpreted § 1823(e) to include misrepresentations of existing facts made to the maker of a note.

> Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of a warranted fact.

484 U.S. at 93, 108 S.Ct. at 402.

The Court acknowledged that fraud in the factum (such as, the type of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents) which renders a note entirely void would take it out of § 1823(e)'s application. However, it held that fraud in the inducement, which renders a note voidable but not void, still allows the FDIC to acquire title or interest in the note. Under such circumstances, § 1823(e) applies. Also, the Court stated that the FDIC's knowledge of any misrepresentation was irrelevant to § 1823(e)'s application. "The short of the matter is that Congress opted for the certainty of the requirements set forth in § 1823(e). An agreement that meets them prevails even if the FDIC did not know of it; and an agreement that does not meet them fails even if the FDIC knew." 484 U.S. at 95, 108 S.Ct. at 403.

■ When a bank fails and the FDIC serves as the receiver, it has two methods to pay off the depositors.

The first is simply to liquidate the bank's assets and pay the depositors their insured amounts, covering any shortfall with insurance funds. The FDIC tries to avoid this option, however, because it decreases public confidence in the banking system and may deprive depositors of the uninsured portions of their funds.

The second, and preferred, alternative is to initiate a "purchase and assumption" transaction (P & A). In this type of transaction, the FDIC as receiver arranges to sell acceptable assets of the failed bank to an insured, financially sound bank, which assumes all of the corresponding deposit liabilities and reopens the failed bank without an interruption in operations or loss to depositors. The FDIC as receiver then sells to the FDIC in its corporate capacity the assets that the assuming bank declined to accept. The corporate entity of the FDIC in turn attempts to collect on the unacceptable assets to minimize the loss to the insurance fund.

*Grubb v. FDIC,* 868 F.2d 1151, 1154–55 (10th Cir.1989) (citations omitted). The fact that the FDIC must make immediate assessment of the assets and liabilities in determining which method to pursue lends itself to a need for the FDIC to rely on the bank records without having to determine the existence of side agreements which do not conform to the requirements in § 1823(e).

It is significant to note that the vast majority of the cases which apply § 1823(e) involve both facially valid notes or guarantees imposing a unilateral obligation on the maker to pay a certain sum to the bank and makers thereof asserting defenses based upon separate, undisclosed agreements. *See Howell v. Continental Credit Corp.,* 655 F.2d 743, 746 (7th Cir.1981) (listing cases). *D'Oench, Duhme* and *Langley* are such cases and *Langley* referred to and relied upon the Uniform Commercial Code's principles regarding holder in due course status being applicable to negotiable instruments. It is easy to see how § 1823(e) necessarily applies when the FDIC is dealing with a negotiable instrument as a bank asset.

■ On the other hand, nonnegotiable instruments and other types of contracts are conditional by their terms. To the extent of those terms, the relative obligations of the respective parties are grounded in the asset, itself, and not in a side agreement. When the FDIC makes its examination and assessment of this type of asset, it has immediate notice that the asset's value is conditional or contingent. The evils sought to be remedied by § 1823(e) do not come into play.

In *FDIC v. Aetna Casualty & Surety Co., supra,* the FDIC sued to enforce a banker's blanket bond issued by Aetna to UAB–K. Aetna defended, in part, by claiming that the bond was void under Tennessee law because (1) UAB–K made material misrepresentations in its application for the bond and (2) City and County Insurance (CCI), through which Aetna dealt with UAB–K, knew of the misrepresentation and acted as an adverse agent to Aetna. The district court held that § 1823(e) barred these defenses and a judgment against Aetna was obtained.

The Sixth Circuit reversed. Part II of Judge Guy's lead opinion provided his analysis of § 1823(e) and his conclusion that it was not meant to deal with contracts such as insurance policies. His reasoning was that, as opposed to negotiable instruments, contracts which include bilateral obligations are conditional in nature and that the FDIC could not, by acquisition, defeat those conditions. He referred to other circuits which had held that the FDIC does not acquire nonnegotiable instruments free of defenses which inherently arise from the instrument. *See Sunbelt Sav., FSB Dallas v. Montross,* 923 F.2d 353 (5th Cir. 1991), *aff'd as modified on reh'g en banc sub nom. Resolution Trust Corp. v. Montross,* 944 F.2d 227 (5th Cir.1991) (federal holder in due course doctrine which bars promissory note makers from asserting personal defenses against the FDIC in connection with a purchase and assumption

transaction does not apply to nonnegotiable instruments); *Howell v. Continental Credit Corp., supra* (*D'Oench, Duhme* and § 1823(e) inapplicable where the lease sought to be enforced by the FDIC manifested bilateral obligations and served as the basis of the lessee's defense).

The blanket bond, including the application, did not contain a specific provision that coverage was withdrawn in the event of misrepresentation. However, Judge Guy viewed as controlling the fact that the bond involved bilateral obligations of which the FDIC would be aware when it reviewed the bond and accompanying documents.

> The primary purpose of *D'Oench* and section 1823(e) is to provide notice to federal bank examiners and not to change conditional promises to pay into absolute obligations. Essentially, we are holding that when the FDIC, in the course of a purchase and assumption transaction, finds a bankers blanket bond, it acquires the bond with knowledge of the recognized defenses available under insurance law.

947 F.2d at 208. As to what defenses would be available, Judge Guy stated that it was unnecessary to fashion a uniform federal rule with regard to insurance contracts. Thus, he held that Aetna may assert its defenses under Tennessee law.

The panel majority did not fully adopt Judge Guy's opinion. However, Judge Nelson's concurring opinion, joined by Senior Judge Celebrezze, is no less material to the issue in this case. It states:

> Although I agree with much of what is said in Part II, it seems to me unnecessary to decide whether 12 USC § 1823(e) is or is not applicable to Aetna's bond. Even if 1823(e) applies to such bonds— and I am inclined to think that an asserted right to recover on an insurance contract can be an "asset" under 1823(e) no less than an asserted right to recover on a negotiable instrument—it seems to me that the "agreement" that arguably tends to diminish or defeat the FDIC's interest in the asset is part and parcel of

the asset itself, and as such it meets each of the four requirements of the statute.

> The bank's application did not ripen into an agreement until Aetna issued the bond. When the bond was issued, the application was an integral part of it— and it was (1) in writing, (2) executed by the bank, (3) approved by the Board of Directors, and (4) has continuously been an official record of the bank. It seems to me that the "agreement" in question is thus valid against the FDIC under the plain language of the statute.

> Except to the extent indicated above, I agree with Part III in its entirety. On remand, Aetna should be allowed to present its misrepresentation and adverse agency defenses.

947 F.2d at 210–211.

The Sixth Circuit apparently viewed the bank's written representations made pursuant to the policy application to be terms of the contract of insurance for which the insurer, Aetna, was entitled to prove that the representations were knowingly false. In *Howell v. Continental Corp., supra,* the Seventh Circuit stated that "the fact that the court must go outside the leases to test the *strength* and *validity* of the defenses is not fatal where the *foundation* and *basis* of that defense is in a document arguably meeting the nonsecrecy requirements of § 1823(e)." 655 F.2d 748. We adopt the reasoning used by the Sixth and Seventh Circuits.

■ By completing and submitting the application for insurance and accompanying documents required by the application, UAB–K made written representations which became part of the contract when the policy issued. This contract was far from a "facially unqualified note subject to an unwritten and unrecorded condition" as existed in *Langley.* To the extent of the written representations, National Union is entitled to defend against a claim under the policy by showing that UAB–K made misrepresentations in such a fashion to allow the policy to be voided pursuant to T.C.A. § 56–7–103.[3]

---

**3.** T.C.A. § 56–7–103 provides:

*Misrepresentation or warranty will not avoid*

*policy-Exceptions.*—No written or oral misrep-

■ Further, even if the evidence is insufficient to call for the voiding of the policy, National Union is entitled to defend by showing that a claim is excluded from coverage pursuant to paragraph 22 of the application because it arose from an act, error or omission about which a director or officer had knowledge or information. It is unnecessary that each alleged act or omission, or an insured's knowledge thereof, be in writing pursuant to § 1823(e). The foundation and basis of National Union's defense is fully contained in the policy exclusions. To hold otherwise, thereby allowing the FDIC to enforce payment under the policy without honoring the policy's exclusionary clause, would be "giving the FDIC the ability to transmute lead into gold." *Sunbelt Sav., FSB Dallas v. Montross, supra,* 923 F.2d at 957. We do not believe that congress has given the FDIC the power to transform an insurance contract into the equivalent of a negotiable instrument.

Accordingly, we affirm the decision of the Court of Appeals in reversing the chancellor's grant of summary judgment. This case is remanded to the trial court where National Union shall be allowed to present its misrepresentation and nondisclosure defenses against both the FDIC and the Thompson estate.[4] Costs are taxed against the appellants.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.

---

resentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

4. The parties raised an issue regarding whether the chancellor determined that FDIC had provided notice of claims in one or in two policy years. Obviously, resolution of this issue is best left to the chancellor.